**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDA VERBOOM CURRY and ALLEN CHEUNG, | No. <u>1:20-cv-03088</u> |
| Plaintiffs, | |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1333(1), 1332(a), 1441, and 1446, The Boeing Company ("Boeing") hereby removes to the United States District Court for the Northern District of Illinois the case styled *Curry v. The Boeing Co.*, currently pending in the Circuit Court of Cook County, Illinois County Department, Law Division, as Case No. 2020 L 000695. In further support of this Notice of Removal, Boeing states as follows:

### I.  Background and Procedural History

1.    Plaintiffs, citizens and residents of Florida, filed their complaint against Boeing, a Delaware corporation headquartered in Chicago, on January 17, 2020, in the Circuit Court of Cook County, Illinois, County Department, Law Division, as Case No. 2020 L 000695. *See* Ex. A, Compl., ¶¶ 1–2, 22.

2.    Plaintiffs assert claims arising from an alleged "contaminated air event" while working as flight attendants aboard a Boeing aircraft during United Airlines Flight 71 on January 19, 2018. Ex. A ¶¶ 15–21.

3.    According to the Complaint, "[a]bout 45 minutes into the flight," which had departed Amsterdam, Netherlands, destined for Newark, New Jersey, "there was a contaminated air event onboard when flight crew and passengers reported a 'dirty sock' smell." Ex. A ¶¶ 15,

17.   The Complaint states that the flight diverted back to Amsterdam, where medical personnel provided treatment to flight crew and passengers who had fallen ill.  *See id.* ¶¶ 18–19.  Plaintiffs allege the bleed air system of the Boeing aircraft was defective in design and allowed "toxic" chemicals to circulate in the aircraft cabin, which allegedly caused them to suffer short- and long-term health effects and economic injury.  *Id.* ¶¶ 20–21.  They assert claims for strict liability, negligence, fraud, and *res ipsa loquitur*.  *Id.* ¶¶ 65–94.

4.      Copies of all other process, pleadings, and orders served on Boeing in the state court action are attached as Exhibit B.[1]

5.      Venue is proper for removal to this Court because it is the United States District Court for the district and division embracing the place where the state action was pending.  *See* 28 U.S.C. § 1441(a).

6.      In accordance with 28 U.S.C. § 1446(d), Boeing is today serving this Notice of Removal on Plaintiffs' counsel and filing a copy of this Notice with the Clerk of the Circuit Court of Cook County, Illinois.

## II.    Grounds for Removal

7.      A civil action brought in state court is removable if the district court has original jurisdiction over it.  28 U.S.C. § 1441(a).  As set forth below, this Court has jurisdiction based on admiralty, 28 U.S.C. § 1333(1), and diversity, 28 U.S.C. § 1332(a).

### A.    Admiralty Jurisdiction

8.      Federal district courts "have original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they

---

[1] Not included are various administrative orders of general applicability entered by the Circuit Court relating to COVID-19 and certain clerk-generated electronic "post cards" giving notice of rescheduled hearing dates as a consequence of court closures stemming from that emergency.

are otherwise entitled."  28 U.S.C. § 1333(1).  A civil case is one of "admiralty jurisdiction" if (1) the alleged "tort occurred on navigable water," and (2) the activity in question bears a "substantial relationship to traditional maritime activity."  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995); *see also Lu Junhong v. The Boeing Co.*, 792 F.3d 805, 813–17 (7th Cir. 2015) (holding admiralty jurisdiction removal by Boeing was proper in case involving alleged torts occurring during transoceanic flight).  Both requirements are satisfied here.

9.      With respect to the location of the alleged tort, Plaintiffs allege that they were injured by aircraft cabin air contamination during a flight that departed from Amsterdam and was destined for Newark.  Ex. A ¶ 15.  The Complaint does not identify the whereabouts or trajectory of the aircraft at any point in time, although it alleges reports of a "'dirty sock' smell" in the cabin "[a]bout 45 minutes into the flight," *id*. ¶ 17, and that the flight captain made the decision at some point to divert the plane back to Amsterdam.  *Id*. ¶ 18.

10.     Because the Complaint is silent, it is necessary to consult sources outside the Complaint, such as automatic dependent surveillance–broadcast ("ADS-B") position data, in order to determine the aircraft's location when the alleged "dirty sock" smell occurred and the location where the aircraft diverted.  While in flight, aircraft equipped with ADS-B equipment periodically broadcast information, including the aircraft's current position, altitude, and velocity, through an onboard transmitter to suitably equipped air traffic control ground stations and/or ADS-B transceivers on satellites.  This data can be used by air traffic control services to monitor aircraft and manage air traffic flow.  It can also later be used to reconstruct an aircraft's flight path and determine its approximate location at particular points in time.

11.     As plotted on the Google Earth Pro application, ADS-B data for the flight in question (United Airlines Flight 71 on January 19, 2018) shows that the flight headed northwest

out of Amsterdam, and that at approximately 45 minutes after takeoff, the aircraft was travelling over the North Sea, the navigable northeastern arm of the Atlantic Ocean running between the British Isles to the west and southwest and the mainland of northwestern Europe to the east, south, and southeast,[2] as shown in the below graphic. The marker identifies the location of the flight as it was outbound from Amsterdam and had been flying for approximately 45 minutes.



12. Thereafter, according to the ADS-B data, the aircraft continued on a northwest trajectory, across Great Britain, and out over the Atlantic Ocean. While traveling at some point over the area identified within the "estimated diversion area" depicted as the grey-shaded area between the blue lines in the graphic below, the aircraft diverted from its original outbound flight

---

[2] See "North Sea," ENCYCLOPEDIA BRITANNICA, *available at*: https://www.britannica.com/place/North-Sea.

path, turned around, and began a return that took it on an approximately parallel, southeastern return path over the Atlantic Ocean, across the British Isles and the North Sea, to Amsterdam, as shown below.



13.     The green lines in the above graphic show the flight's outbound and inbound paths as captured in the ADS-B data, including the last outbound data point and the first inbound data point.  There is no publicly available ADS-B data for the grey-shaded area between the two blue lines delineated as the "estimated diversion area" where the aircraft was flying over open water, due likely to the limits of transmission technologies and distance from land stations.  The estimated diversion area was plotted by estimating the distance that the aircraft traveled between the last outbound and first inbound locations captured in the ADS-B data (approximately 606 miles), based on (1) the time lapse between those two locations (63 minutes) and (2) assuming that during that

time the aircraft traveled at the median between the outbound and inbound speeds (577.5 miles per hour). With that information, and based on the outbound heading of the flight as indicated by the ADS-B data, the "estimated diversion area" estimates the area over which the flight diverted and began its return to Amsterdam. As indicated in the above graphic, the aircraft was flying over the Atlantic Ocean, west of Great Britain, at the time it diverted.

14. Thus, the ADS-B data captures that when Plaintiffs allegedly noticed a "dirty sock smell," at approximately 45 minutes from takeoff, Ex. A ¶ 17, the aircraft was traveling over the North Sea, and when the aircraft thereafter diverted back to Amsterdam, *id.* ¶ 18, it was flying over the Atlantic Ocean. Accordingly, the alleged "tort occur[ed]" at least in part "on navigable waters."[3] *Grubart*, 513 U.S. at 534. The first requirement for establishing admiralty jurisdiction is therefore satisfied. *Id.*; *Lu Junhong*, 792 F.3d at 815–16 (explaining that § 1333(1) does not "require[] the whole tort to occur on the water," and finding admiralty jurisdiction based on claims relating to Boeing's aircraft autothrottle system design and performance while aircraft was over navigable water).

15. In addition, the activity giving rise to the incident in this case—a flight from Amsterdam bound for the United States—has a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. As explained in *Lu Junhong*, before the advent of aircraft, such a journey would have been made by an ocean-going vessel and is sufficiently related to

---

[3] For purposes of admiralty law, "a tort is deemed to occur where the injury occurs." *Taghadomi v. Extreme Sports Maui*, 257 F. Supp. 2d 1262, 1269 (D. Haw. 2002), *aff'd sub nom. Taghadomi v. United States*, 401 F.3d 1080 (9th Cir. 2005). The same is true under any potentially applicable state law. *See, e.g.*, *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 2020 WL 762493, at *3 (Del. Feb. 17, 2020) (Delaware); *Beigel & Sandler v. Weinstein*, 1992 WL 357523, at *2 (N.D. Ill. Nov. 24, 1992) (Illinois); *Lewis v. Bours*, 835 P.2d 221, 225 (Wash. 1992) (Washington). Accordingly, this particular issue does not require the Court to examine or choose among any potentially applicable bodies of substantive law, and Boeing does not waive, but rather expressly reserves, the right to invoke and/or object to the application of any particular body of substantive law in the future, as may be appropriate to the facts and posture of the case. By filing this Notice of Removal, Boeing does not waive any other rights, privileges, or defenses and does not concede that this is an appropriate or convenient forum for resolution of these or any other claims.

traditional maritime activity to warrant the exercise of admiralty jurisdiction. *Lu Junhong*, 792 F.3d at 816 ("Asiana 214 was a trans-ocean flight, a substitute for an ocean-going vessel—as flights from the contiguous United States to and from Alaska, Hawaii, and overseas territories also would be—and thus . . . this situation 'might be thought to bear a significant relationship to a traditional maritime activity.'"); *see also Miller v. United States*, 725 F.2d 1311, 1315 (11th Cir. 1984) (flight from Bahamas to Florida within admiralty jurisdiction); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1983) (flight from California to Hawaii within admiralty jurisdiction); *Roberts v. United States*, 498 F.2d 520, 524 (9th Cir. 1974) (flight from California to Vietnam within admiralty jurisdiction).

**B. Diversity Jurisdiction**

16. The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and there is diversity between the plaintiffs, on the one hand, and the defendants, on the other. 28 U.S.C. § 1332(a); *Ashenden v. Lloyd's of London*, 934 F. Supp. 992, 995 (N.D. Ill. 1996) ("Section 1332 has been interpreted to require 'complete diversity,' that is, each and every defendant must have different citizenship from each and every plaintiff."). Both requirements are satisfied here.

17. According to the Complaint, Plaintiffs seek damages in excess of $50,000 on each of their five claims, totaling in excess of $250,000. Ex. A ¶¶ 67, 70, 77, 85, 94. Therefore, the amount-in-controversy requirement is satisfied.

18. Plaintiffs allege they are both domiciled in and citizens of the state of Florida. Ex. A ¶¶ 1–2. Boeing is a Delaware corporation with its corporate headquarters in Illinois. *Id.* ¶¶ 2, 22. Therefore, there is complete diversity of citizenship.

19.     Notably, the federal removal statute provides that a "civil action otherwise removable solely on the basis of [diversity jurisdiction] . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

20.     Here, Boeing has removed based on the Court's admiralty jurisdiction, as well as diversity.  Therefore, the forum state defendant prohibition of § 1441(b)(2)—which applies only to removal "solely" on diversity—is inapplicable.  *See Lu Junhong*, 792 F.3d at 817–18; *Crisanto v. Caladan Oceanic, LLC*, 2018 WL 3641703, at *3 (N.D. Tex. Aug. 1, 2018) (defendants removing admiralty cases under §§ 1333 and 1441 need only show that they meet the jurisdictional requirements of diversity jurisdiction; forum-defendant rule is inapplicable in this scenario); *Boakye v. NCL (Bah.) Ltd.*, 295 F. Supp. 3d 1342 (N.D. Ga. 2018) ("Whereas before the amendment [to 28 U.S.C. § 1441], *no* case could be removed if a defendant was in his home state, *unless* there was a federal question, now *all* cases involving a home state defendant in which a federal court could have original jurisdiction can be removed *unless* jurisdiction is based solely on diversity.") (emphasis in original).

### III.     Removal Is Timely

21.     This removal is timely.

22.     Whereas the removal statutes set forth certain potentially applicable deadlines for removal, including that a defendant has 30 days to remove after service of the complaint, 28 U.S.C. § 1446(b)(1), "[t]he 30-day removal clock is triggered" only if the complaint "affirmatively and unambiguously reveals that the case is or has become removable."  *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821 (7th Cir. 2013).  That it might be possible to infer or deduce a potential basis for removal is not enough.  *See, e.g.*, *Copeland v. N. Am. Pipe Co.*, 2018 WL 557928, at *2 (W.D.

Wis. Jan. 24, 2018) (in light of *Walker*, prior decisions holding that the 30-day deadline is triggered "from a reasonable and commonsense reading of the complaint" or from "conspicuous clues" "are no longer good law"). Moreover, it is only the complaint that matters for purposes of triggering the 30-day clock—"[t]he defendant's subjective knowledge of any of th[e] [jurisdictional] facts is immaterial." *Hostetler v. Johnson Controls, Inc.*, 2016 WL 3662263, at *3 (N.D. Ind. July 11, 2016) (citing *Walker*, 727 F.3d at 825). Instead, the 30-day clock does not begin to run unless and until the defendant receives some "pleading or other litigation paper facially revealing that the grounds for removal are present." *Walker*, 727 F.3d at 823–24; *see* 28 U.S.C. § 1446(b)(3). Aside from the complaint, the only "other paper" that counts is "litigation materials actually received by the defendant or filed with the state court during the course of litigation." *Id*. at 825. If the defendant does not receive such a paper, "the removal clock never actually start[s] to run." *Id.*

23. Boeing has not, to date, been served with a qualifying pleading or "other paper" unambiguously revealing the grounds for this Court to exercise admiralty jurisdiction. As noted above, the Complaint is silent as to the location of the aircraft at the time of the alleged contaminated-air event and thus whether the alleged tort "occurred on navigable water." *Grubart*, 513 U.S. at 534.

24. Only through its own plotting and analysis of the aircraft's flight path and position data was Boeing able to determine that the aircraft was travelling over the North Sea at the time of the alleged "dirty sock" smell in the aircraft cabin and that it diverted back to Amsterdam while flying over the Atlantic Ocean. Those grounds for removal did not appear "affirmatively and unambiguously" on the face of the Complaint or other paper served to Boeing. Therefore, the 30-day clock has not begun to run. *See, e.g.*, *Ayotte v. The Boeing Co.*, 316 F. Supp. 3d 1066, 1074 (N.D. Ill 2018) (30-day clock was not triggered by general allegations in complaint, which

did not give "'unambiguous' notice to Boeing that it had a right to remove based on federal officer jurisdiction"); *Gross v. FCA U.S., LLC*, 2017 WL 6065234, at *3 (N.D. Ill. Dec. 7, 2017) (police report listing plaintiff's residence did not trigger removal clock because residence is not synonymous with citizenship). Boeing's removal is therefore timely.

## IV.     Conclusion

WHEREFORE, Boeing hereby removes to this Court the case styled *Curry v. The Boeing Co.*, currently pending in the Circuit Court of Cook County, Illinois County Department, Law Division, as Case No. 2020 L 000695.

Dated: May 25, 2020                           Respectfully submitted,

                                              By: /s/ Dan K. Webb_____

**Perkins Coie LLP**                          **Winston & Strawn LLP**

V.L. Woolston                                 Dan K. Webb
Todd W. Rosencrans                            Christopher B. Essig
(*pro hac vice applications forthcoming*)     Joseph L. Motto
1201 Third Avenue, Suite 4900                 35 W. Wacker Dr.
Seattle, WA 98101                             Chicago, IL 60601
T. (206) 359-8000                             T. (312) 558-5600
VWoolston@perkinscoie.com                     F. (312) 558-5700
TRosencrans@perkinscoie.com                   DWebb@winston.com
                                              CEssig@winston.com
                                              JMotto@winston.com

                                              Sandra A. Edwards
                                              (*pro hac vice application forthcoming*)
                                              101 California Street
                                              San Francisco, CA 94111
                                              T. (415) 591-1000
                                              F. (415) 591-1400
                                              SEdwards@winston.com

*Attorneys for The Boeing Company*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LINDA VERBOOM CURRY and
ALLEN CHEUNG,

No. 1:20-cv-03088

                Plaintiffs,

    v.

THE BOEING COMPANY,

                Defendant.

## CERTIFICATE OF SERVICE

I, Joseph L. Motto, hereby certify that on May 25, 2020, I served a copy of the foregoing NOTICE OF REMOVAL on counsel for Plaintiffs via email as follows:

Joseph A. Power, Jr.
joepower@prslaw.com
Kathryn L. Conway
kconway@prslaw.com
POWER ROGERS & SMITH, LLP
Three First National Plaza
70 West Madison Street, 55th Floor
Chicago, IL 60602

Rich Friedman
rfriedman@friedmanrubin.com
Alisa Brodkowitz
alisa@friedmanrubin.com
Rachel M. Luke
rachel@friedmanrubin.com
FRIEDMAN RUBIN
1126 Highland Ave.
Bremerton, WA 98337

Zoe Littlepage
zoe@littlepagebooth.com
Rainey Booth
rainey@littlepagebooth.com
Matt Leckman
matt@leckmanlaw.com
LITTLEPAGE BOOTH LECKMAN
1912 W. Main St.
Houston, TX 77098

By: /s/ Joseph L. Motto